JKB/cic/332633                                                                443-144-51

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NATIVE AMERICAN ARTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08 CV 3908 |
| | ) | |
| PETER STONE CO., U.S.A., INC., | ) | Judge Darrah |
| | ) | |
| Defendant. | ) | Magistrate Judge Cole |

### DEFENDANT'S MOTION TO DISMISS

Defendant, Peter Stone Co., U.S.A., Inc., by and through its attorneys, hereby moves to dismiss Plaintiff's Complaint under Rules 9(b), 12(b)(1) and 12(b)(6), of the Federal Rules of Civil Procedure.

## I.    INTRODUCTION

This suit allegedly is brought under the Indian Arts and Crafts Act (the "Act"). Plaintiff Native American Arts, Inc. ("NAA") alleges that Defendant Peter Stone Co., U.S.A., Inc. ("PSC") displayed, offered for sale, or sold goods in a manner that "falsely suggests" that such goods were "Indian products, Indian produced or the product of a particular Indian or Indian tribe" in violation of the Indian Arts and Crafts Act, 25 U.S.C. § 305e(a) (the "Act").

PSC moves to dismiss NAA's Complaint on several grounds:

1)   Because the federal statute under which NAA brings this suit violates the Equal Protection Clause of the Fifth Amendment of the U.S. Constitution

2)   For NAA's lack of standing, under Rule 12(b)(1);

3)   For failure to plead misrepresentation or fraud with specificity, under Rule 9(b); and

4)   For failure to state a claim, under Rule 12(b)(6).

NAA[1] is a professional plaintiff which Judge Moran has described as a "cottage industry" consisting of the bringing of federal lawsuits such as this one.[2]    Although NAA alleges in conclusory terms that it is "a wholly Indian owned arts and crafts organization involved in the manufacture, distribution and sale of authentic Indian arts and crafts" (Complaint ¶ 3), it does not qualify as such an organization under 25 U.S.C. § 305 because its minimal "arts and crafts" activities are merely a front for its true business, its "cottage industry" of filing lawsuits and extracting settlements from defendants by invoking the coercive "" $1,000 per day" penalty provision of the Act. (*See, e.g.*, Complaint ¶ 30). The majority of NAA's revenue and likely all of its profit come from its "cottage industry." In just one lawsuit, for example, NAA collected a $1,000,000 settlement payout from J.C. Penney. *See Flodine v. State Farm Insurance Co.*, 2003 WL 1394977 (N.D. Ill) at *11, n. 9.

Since 1997, NAA has filed over 70 virtually identical federal lawsuits in this Court purportedly under the Act. All but a handful have settled and in the one case that did go to trial, the jury rendered a verdict for the defendant, which was affirmed on appeal. *Native American Arts v. Waldron Corp.*, 399 F.3d 871 (7th Cir. 2005.)

Some of NAA's complaints have been dismissed on various grounds[3] such as failure to state a claim under Rule 12(b) and/or failure to allege misrepresentation with the required specificity under Rule 9(b), lack of standing, and lack of personal jurisdiction over the defendant.

---

[1]NAA is wholly owned by its president Matthew Mullen and his mother, who was once married to attorney Michael Mullen, Matthew Mullen's father and NAA's counsel in every one of its lawsuits.

[2]*Native American Arts, Inc., v. Jucius*, 2005 U.S. Dist. Lexis 10683, U.S. District Court, N.D.Ill., Case No. 8756, April 19, 2005.

[3] *See Native American Arts, Inc. v. Aquino*, No. 04 C 2540 WL 2434260, *3 (N.D.Ill. Oct. 29, 2004) (failure to state a claim); *Native American Arts, Inc. v. Bundy-Howard, Inc.*, No. 01 C 1618, 2001 WL 1568877, *3 (N.D. Ill. Dec. 10, 2001) (lack of personal jurisdiction); *Moon Raven Intl Inc.*, 1998 WL 325245, *5 (same).

This lawsuit is yet another product of its "cottage industry," another attempt to achieve NAA's primary business objective extracting money from a defendant like PSC.

## A.    NAA's Complaint

NAA alleges that PSC has violated the Act as amended by the Indian Arts and Crafts Enforcement Act of 2000.  25 U.S.C. § 305(e) ("2000 Amendment").  The 2000 Amendment, particularly 25 U.S.C. 305e(c)(1)(C) as explained below, violates the prohibition against legislative action based solely on racial origins, and violates the Fifth and Fourteenth Amendments of the United States Constitution.

The Act was enacted to prevent consumer confusion regarding the source of origin of Native American-style arts and crafts. It authorizes an Indian tribe, an individual member of the tribe, or an "Indian arts and crafts organization," with standing to do so, to bring a civil action against a person who offers or displays a good for sale in a manner that falsely suggests it is "Indian produced, an Indian product, or the product of a particular Indian or Indian tribe or Indian arts and crafts organization."  25 U.S.C. § 305e.  Under the Act a plaintiff with standing may:

> (1)    obtain injunctive relief or other equitable relief; and
>
> (2)    recover the greater of–
>
>> (A)    treble damages; or
>>
>> (B)    in the case of each aggrieved individual Indian, Indian tribe, or Indian arts and crafts organization, not less than $1,000 for each day on which the offer or display for sale or sale continues.

25 U.S.C. § 305e(a).

Consistent with Article III, a party cannot recover damages under the Act unless it is injured, and it cannot claim the penalties under Subsection (B) unless it is also "aggrieved."

The Complaint alleges that NAA is a "wholly Indian-owned arts and crafts organization involved in the manufacture, distribution and sale of authentic Indian arts and crafts." (Complaint ¶ 3). It further alleges that NAA is a competitor of the Defendant and has suffered competitive injuries as a result of Defendant's actions. (Complaint ¶ 24). However, NAA fails to allege any specific "competitive injuries" resulting from PSC's conduct.

## II.    ARGUMENT

### A.    The Indian Arts And Crafts Enforcement Act Of 2000 Violates The Fifth Amendment To The Constitution

The Fifth Amendment to the United States Constitution provides that "No person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. Over the past few decades, the Supreme Court has expressed increasing skepticism of the constitutionality of race-conscious governmental action. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995); *Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989); *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267 (1986); and *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265 (1978). In *Adarand*, the Supreme Court held that any federal, state or local law purporting to grant rights or preferences to members of a particular race or ethnic origin must be analyzed under strict scrutiny. *Adarand*, 515 U.S. at 227. Despite the clear holding of *Adarand*, the Indian Arts and Crafts Enforcement Act of 2000 remains "on the books."

### 1.    Strict Scrutiny Applies to the 2000 Amendment

Under *Adarand*, the 2000 Amendment to the Act is unconstitutional because it cannot survive strict scrutiny. Government action does not need to be based on race to be subject to strict scrutiny. As reiterated in *Adarand*, government action touching upon race or ethnic origin mandates strict judicial scrutiny. "When [political judgments] touch upon an individual's race or ethnic background, he is entitled to a judicial determination that [the governmental action] is

4

precisely tailored to serve a compelling governmental interest." *Adarand* at 224-225. Thus, governmental classifications based *indirectly* on race or ethnic origin or based *in part* on race or ethnic origin are subject to strict scrutiny.

Notwithstanding the Supreme Court's clear guidance to Congress in *Adarand*, the 2000 Amendment grants Native Americans a right not enjoyed by any other Americans. Before the 2000 Amendment to the Act, Indian arts and crafts organizations and individual Indians had no private cause of action under the Act; only the Attorney General and Indian Tribes did. 25 U.S.C. § 305e(c)(1)(C); *NAA v. J.C. Penney Co.*, 5 F.Supp.2d 599 (N.D. Ill. 1998) (denying NAA standing to sue under the Act). In 2000, Congress amended Section 305e(c)(1), granting a private cause of action to Indian arts and crafts organizations and individual Indians. As the law now stands, federally recognized Indian tribes, arts and crafts organizations and individual Indians are the only persons granted the right to bring a private cause of action for alleged violation of the Act. 25 U.S.C. § 305e(c)(1)(B) and (C). On its face and in practice, therefore, the Act is federal law based solely and exclusively on race or ethnic origin.

Under strict scrutiny analysis, any federal, state or local governmental action that grants rights, preferences or privileges based on race or ethnic origin is presumed unconstitutional unless it can be shown that such action is narrowly tailored to meet a compelling governmental interest. *Adarand*, 515 U.S. at 227 (holding "we hold today that all racial classifications, imposed by whatever federal, state, or local governmental actor, must be analyzed by a reviewing court under strict scrutiny.") In other words, such classifications are constitutional only if they are narrowly tailored measures that further compelling governmental interests. *Id*. *See also Shaw v. Reno*, 509 U.S. 630, 643-44 (1993) (holding "[a] racial classification, regardless of purported motivation, is presumptively invalid and can be upheld only upon an extraordinary

justification."). The strict scrutiny test is clear. Government action touching upon race or ethnic origin is unconstitutional unless it is narrowly tailored to meet a compelling governmental interest.

        a.       **There Is No Compelling Government Interest in Granting Only Indians a Private Right to Sue for Alleged Violations of the Act**

The Act satisfies neither component of strict scrutiny analysis and is therefore unconstitutional. The benchmark for judging the adequacy of the government's factual predicate for race-based legislation is whether there exists a "strong basis in evidence for [the government's] conclusion that remedial action was necessary." *Richmond v. J.A. Croson Co.*, 488 U.S. 469, 500 (1989).

The Act contains no specific statement or evidence supporting the requisite "strong basis in evidence" required under strict scrutiny. Rather, the stated purpose of the Act is "to promote the economic welfare of the Indian tribes and Indian individuals through the development of Indian arts and crafts and the expansion of the market for the products of Indian arts and crafts." 25 U.S.C. § 305(a). What is missing, however, is any evidence supporting the conclusion that a private cause of action is necessary to accomplish the stated purpose of promoting economic welfare.

Moreover, the legislative history of the 1990 amendment to the Act contains no such evidence. The stated reason for the 1990 amendment to the Act was "to protect Indian artists from unfair competition from counterfeits." H.R. Rep. 101-400(11), 101st Cong, 2nd Sess. 1990, 1990 WL 259122, 1990 U.S.C.C.A.N. 6391. The 2000 Amendment to the Act was passed with virtually no discussion or explanation of the compelling governmental interest in expanding the Act's private cause of action. Rather, mere conclusory statements by the bill's legislative

sponsors are found.  *See* 146 Congr. Rec. H10512-01, 2000 WL 1575375 (stating that the Amendment was a "needed tool").

With respect to the Act and the 2000 Amendment, there is neither any explanation nor strong basis in evidence, demonstrating how this governmental race-based classification develops Indian arts and crafts or expands the market for Indian arts and crafts.  Hence, in the absence of any evidence, strong or otherwise, articulating a compelling reason for the Congressional grant of a private right of action, based solely and exclusively on racial classification, the Act fails the first prong of the Supreme Court's strict scrutiny test.

### b.     The Act is Not Narrowly Tailored

The race based private cause of action under the Act is not the least narrowly tailored method to meet even a theoretical compelling government interest.  The Act grants rights to both individuals and groups based on their race.  Moreover, the legislative history of the Act shows that race-neutral means were considered and drafted at the committee level, but dropped without explanation from the final version of the Act in 1990.[4]  H.R. Rep 101-400 (II), 101st Cong. 2nd Sess. 1990; 1990 U.S.C.C.A.N. 6391.

Congress, in enacting the Act, failed to sufficiently tailor its race-based remedy as narrowly as possible.  The following scenario vividly demonstrates that the Act fails to be the most narrowly tailored method to meet the government's interest in preventing the falsely misleading sale of non-Indian made goods:

Four kiosks operated by A, B, C and D stand next to each other in a shopping mall.

---

[4]Section 305(e)(c)(i)(C) originally provided for a private cause of action by "any person aggrieved by such offer display or sale." This language was not included in the final version of the Act.

A.   is an Indian who is a member of a recognized Indian tribe under the Act or applicable regulations, sells high-quality Native American goods made by Native Americans;

B.   is not an Indian, sells goods of Native American style, and, falsely claims that they are Native American-made, when in fact they are cheap knock-offs made in China.

C.   is also not Native American, sells the highest-quality goods of Native American-style and design, but does not claim they are made by native Americans; rather C explains to all of his customers that he is not Native American; he studied Native American art for many years, and painstakingly hand-crafts his products in his garage in the suburbs.

D.   is a non-Native American wholesale dealer, who buys goods from B for resale and B fraudulently leads D to believe that the goods are authentic Native American goods.

B clearly violates the Act by lying about the origin of his goods. Since their kiosks are next to each other, A and C each lose sales to B because of his B's false claims of authenticity and are damaged. Under the Act, A can sue B and collect $1,000 per day, per item in damages, but C has no recourse whatsoever under the Act. In addition, under NAA's strict liability theory, D also violates the Act, unwittingly because when he sells the goods he got from B, he thinks they are authentic. Under the Act, A again has a remedy, he is granted the right to sue D and collect $1,000 per day, per item in damages. D, however, does not have standing to sue B under the Act, even though D was the party most directly injured by B's false claims. Finally, the Act

does not even grant D the right of contribution against B. Hence, D has no recourse under the Act.

Unlike similar federal consumer protection legislation such as the Lanham Act or state consumer protection laws, under which any aggrieved party, regardless of race or ethnicity, has a cause of action for its violation, the Act specifically bars an aggrieved non Native American, such as C, from bringing suit under it. In the parlance of strict scrutiny analysis, the Act is "under inclusive." It fails to grant the right to sue to all persons, regardless of race or ethnic origin, who are or could be economically harmed or otherwise aggrieved by the falsely misleading sale of non-Native American made arts and crafts. It may also be "over inclusive" if, as it expected NAA will argue, it grants to any Indian the right to sue, without regard to whether such Indian has suffered any actual injury or has been aggrieved by the falsely misleading sale of non-Native American made arts and crafts.

Because the Act fails to be the most narrowly tailored method to meet the government's interest in preventing the falsely misleading sale of non-Native American made goods, the Act fails the second prong of the Supreme Court's strict scrutiny test.

**B.    While The Supreme Court Has Held That Federal Legislation Involving Native Americans Can Constitute Political Classification Subject to Rational Basis Review, Courts After Halico Have Nonetheless Applied Strict Scrutiny to Legislation Involving Native Americans**

Given the unambiguous position of the Supreme Court in *Adarand*, it would be difficult to imagine how the Act can withstand any post-*Adarand* Equal Protection challenge. While the Supreme Court has held that legislation involving Native Americans may constitute political classification subject to rational basis review, courts addressing legislation since *Adarand* have applied strict scrutiny nonetheless, recognizing that legislation may constitute racial classification.

C.    **NAA Lacks Standing To Bring This Suit**

The Complaint fails to allege, and NAA otherwise cannot prove, that NAA has suffered an injury traceable to PSC's actions or, in a similar vein, that NAA is a proper party to bring this action.  As such, NAA has no Article III standing and/or prudential standing.  Accordingly, this Court lacks subject matter jurisdiction over this action and the case should be dismissed under Rule 12(b)(I).

1.    **Plaintiff Lacks Article III Standing To Assert Claims Under the Act Because It Has Not Suffered an Injury Traceable To Any Act by PSC**

To establish standing under Article III, NAA must demonstrate that:  (1) it personally suffered an actual or threatened injury caused by the defendant's illegal conduct; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is one that is likely to be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Chow v. Aegis Mortgage Corp.*, 185 F. Supp. 2d 914, 917 (N.D. Ill. 2002) (citations omitted).  Under Article III, a plaintiff has the burden of establishing standing, *Steel Company v. Citizens* for a Better Environment, 523 U.S 83, 104 (1998) and, as such, "must clearly and specifically set forth facts sufficient to satisfy [the] Article III standing requirements."  *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990).

Article III standing under the Act is evaluated under the standard for standing set forth in Section 43(a) of the Lanham Act.  *See Ho-Chunk Nation v. J.C. Penny Co.*, Inc., 1999 WL 1068700, *4 (N.D. Ill. 1999) (noting that the Act was drafted to parallel section 43(a) of the Lanham Act).  To have standing under the Lanham Act, a plaintiff must demonstrate that it possesses a "reasonable interest to be protected against conduct violating the Act." *Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*, 871 F.2d 697, 700 (7th Cir. 1989) (citations

omitted). That interest must be manifested by "a discernable competitive injury." *L.S. Heath & Son Inc. v. AT&T Info. Sys Inc.*, 9 F.3d 561, 575 (7th Cir. 1993).

NAA's Complaint recites general, vague and conclusory allegations that the NAA has "standing" and is "involved in the distribution of authentic Indian arts and crafts" (Complaint ¶ 3), that it is a "competitor of Defendant," and that it has suffered "competitive injuries" as a result of PSC's alleged actions. (Complaint ¶ 24). Such conclusory allegations must be ignored when deciding a motion to dismiss for lack of standing. *Alger v. City of Chicago*, 753 F.Supp. 228, 231 (N.D. Ill. 1990) ("conclusory allegations, to be distinguished from well-pleaded facts, are properly ignored in a motion to dismiss for want of standing"). Absent the conclusory allegations, the Complaint fails to allege enough specific facts that would establish, if proven, a sufficient injury for there to be Article III standing. *See Whitmore*, 495 U.S. at 155 (holding that, to be sufficient for Article III standing, the injury must be concrete, in both a qualitative and temporal sense, distinct and palpable, and fairly traced to the actions of the defendant). The Complaint does not allege any facts regarding what NAA's specific injuries are, or how it has been injured by PSC's actions. Without any proper, specific allegations of an injury in fact, NAA's only stake in the litigation is to recover the statutory damages offered by the Act and to act as a private attorney general. But "[a]n interest unrelated to injury in fact is insufficient to give a plaintiff standing." *Vermont Agency of Natural Resources v. United States ex rel Stevens*, 529 U.S. 765, 772 (2000). The statutory damages available under the Act are merely a "byproduct" of the suit itself which "cannot give rise to a cognizable injury in fact for Article III standing purposes." *Id*. at 773 (citing Steel Co., 523 U.S. at 107). The role of private attorney general is prohibited in the federal courts. *See Nike, Inc. v. Kasky*, 539 U.S. 654, 661 (2003) (J. Stevens, concurring) (stating that respondent, acting as private attorney general, "could not

invoke the jurisdiction of a federal court because he failed to allege any injury to himself that is distinct and palpable"). Accordingly, NAA has no standing under Article III and the Complaint should, therefore, be dismissed with prejudice. The standing requirement blocks just what NAA wants to do here, seek an unjustified windfall in the form of statutory penalties when it has suffered no real damages of its own.

### 2.     Prudential Standing Considerations Require The Complaint Be Dismissed

Even if NAA could satisfy the Article III requirements for standing, which it cannot, there are prudential standing considerations which bar NAA from pursuing this action. Prudential standing is a type of judicial self governance used to determine whether the plaintiff is "a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 546 n. 8 (1986). The aim of the court in applying the principle of prudential standing is to determine whether the plaintiff is "a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Conte Bros. Auto., Inc. v. Quaker State-Slick 50. Inc.*, 165 F.3d 221, 225 (3rd Cir. 1998).

"Congress is presumed to incorporate background prudential standing principles, unless the statute expressly negates them." *Conte Bros.*, 165 F.3d at 227. Lacking any express negation of prudential standing, the Act, like the Lanham Act, incorporates prudential standing principles. Since, as noted above, the Act parallels the Lanham Act, the prudential standing considerations under the Lanham Act are applicable to the Act. Those considerations are:

a.     The nature of the plaintiffs alleged injury: Is the injury of a type that Congress sought to redress in providing a private remedy for violations of the Act?

b.     The directness or indirectness of the asserted injury.

c.     The proximity or remoteness of the party to the alleged injurious conduct.

     d.     The speculativeness of the damages claim.

     e.     The risk of duplicative damages or complexity in apportioning damages.

*Joint Stock Society*, 266 F. 3d at 179-80; *see also Proctor & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 562-63 (5th Cir. 2001) (adopting *Conte Bros*. analysis for prudential standing under the Lanham Act).  Each of these factors militate in favor of finding that NAA lacks prudential standing.

First, if NAA is found to have standing on the basis of these conclusory allegations, then every single Native American, Native American tribe and Native American arts and crafts organization could claim standing based on the mere conclusory allegation that they sell "arts and crafts" and are, therefore, "competitors," and therefore, have been injured.  This would subject PSC to multiple liability for the same conduct.  Because each "aggrieved" party is allegedly entitled to penalties of $1,000 a day, PSC could be subjected to a multiplicity of suits seeking collectively hundreds of millions of dollars in penalties based on only a token sale of a Native American-style product.

Second, NAA has not alleged any direct injury.  Except for conclusory allegations of competitive injury, the Complaint has no allegations that specifically link NAA's alleged injuries to any specific activities of PSC.  NAA makes no allegations regarding the market it serves, its sales channels, whether it is a retailer or distributor, or any other details about its purported advertising, marketing and sales of Native American products.

Third, NAA's connection to the allegedly injurious conduct is, at best, remote.  This consideration requires a court to determine whether there is "an identifiable class of persons whose self interest would normally motivate them to vindicate the public interest," thus "diminishing the justification for allowing a more remote party…to perform the offices of a private attorney general."  *Procter & Gamble*, 242 F.3d at 563.  As previously noted, private

attorney general suits exceed the scope of Article III jurisdiction absent a distinct and palpable injury. *Nike*, 539 U.S. at 661. In this case, individual Indian artists or arts and crafts organizations, whose wares are similar to PSC's offerings and who advertise, market and sell goods in the same channels of trade as PSC, would be far more immediately injured from PSC than any alleged injury to NAA.

Fourth, NAA's damage claim is totally speculative based on the Complaint's conclusory allegations. Actually, it is not clear that NAA is even seeking damages, rather than only statutory penalties. S*ee Vermont Agency of Natural Resources*, 529 U.S. at 772 (statutory penalties cannot create a stake in the outcome so as to create standing).

Fifth, the alleged injury, an undefined "advertising injury," is not one that the Act seeks to redress.

Thus, dismissal of the Complaint, with prejudice, based on the lack of prudential standing is required. A contrary ruling "would result in a great increase in marginal litigation in the federal courts and would not serve the underlying purposes" of the Act. *Conte Bros.*, 165 F.3d at 236.

### D.    Rule 9(B) Applies To The Complaint And Also Mandates Dismissal

Rule 9(b) also dictates that the Complaint be dismissed. Rule 9(b) provides that: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistakes shall be stated with particularity." Courts in this District have recognized that actions brought pursuant to the Act, "which inherently concern misrepresentation, are subject to the heightened pleading requirements of Rule 9(b)." *NAA v. Earth Dweller, Ltd.*, No. 01 C 2370, 2001 WL 910394, at *2 (N.D. Ill. Aug. 10, 2001); *see also Aquino*, 2004 WL 2434260, at *2-3. Accordingly, Rule 9(b) requires that a plaintiff plead the "who, what, when, where and how" of a fraud or false

representation – in other words, as to the allegation of a "false suggestion." *Aquino*, 2004 WL 243260, at *2 (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

### 1.    The Complaint Fails To Allege The "When" With Sufficient Particularity As Required By Rule 9(b)

The Complaint seems to allege that possibly since July 10, 2005, PSC has "advertised, marketed, offered and displayed for sale and sold goods" in a manner that "falsely suggests they are Indian-made, an Indian product, a product of an Indian or the product of an Indian arts and crafts organization," including sales through a website, and advertising and marketing materials. (Complaint ¶ 8-11).  It further alleges that on two specific dates, January 13, 2007 and may 30, 2008, PSC offered, advertised, marketed and displayed for sale and sold goods, via its web site, www.peterstone.com in a manner that falsely suggested they are an Indian product, etc. (Complaint ¶ 10).  In so doing, NAA attached, as exhibits to the Complaint, photographs of items NAA allegedly purchased on that one date. (Complaint ¶ 11, Exhibits A-N).

Although the Complaint makes numerous references to July 1, 2003, it gives no particulars, as required by Rule 9(b), of any act committed by PSC on any date other than the one day in 2006, and the description that event is pure conculsory boilerplate.

### 2.    The Complaint Fails To Provide The "What" And "How"

The Complaint's multiple references to July 10, 2005, and any other dates other than the specific purchases should be stricken or dismissed since the Complaint fails to sufficiently plead, with particularity, the "what", as to the products, and the "how," as to PSC's actions for any purchase date other than January 13, 2007 and May 30, 2008.

Further, in describing the "artwork" allegedly sold by PSC in violation of the Act, NAA alleges that PSC sold multiple quantities of various goods, including Indian products consisting of "artworks," "crafts," and "jewelry" in a "traditional Indian style or medium."  (Complaint ¶

15

8). All references to any alleged goods or products, including, but not limited to, "artworks," "crafts" and "jewelry" other than the products allegedly purchased (Complaint ¶¶ 8-11), should be stricken or dismissed, since such allegations are not pled with sufficient particularity as required by Rule 9(b) and are confusing.

**E.**  **The Complaint Does Not Properly Allege Any "False Suggestion And It Should Be Dismissed Under Rule 12(B)(6)**

The Act only prohibits a person from offering or displaying for sale or selling goods in a manner that "falsely suggests" it is Indian produced, an Indian product, or the product of a particular Indian or Indian tribe or Indian Arts and Crafts Organization resident within the United States, and provides for an action against such a person. 25 U.S.C. § 305, *et. seq*. NAA's allegations in this regard are wholly inadequate. The Complaint, on its face with its Exhibits, actually demonstrates that PSC did not falsely suggest that any of its products were Indian produced, an Indian product, or the product of a particular Indian or Indian tribe or Indian Arts and Crafts Organization resident within the United States.

Exhibits A through M of the Complaint are photographs of the objects which NAA alleges created false suggestions, as prohibited by the Act, through references on the websites. The exhibits actually demonstrate no such "false suggestions." The Act does not prohibit the sale of products that simply are of Native American-style. Nor does it prohibit the use of the words "Indian" or "Native American." The Act only prohibits the use of such words if they are deceptive or false.

Further, the allegations against PSC contained in paragraph 6 of the Complaint rely upon "regulations promulgated by the Secretary of the Interior". However, the Seventh Circuit expressly found that they are not applicable within the context of civil lawsuits for the

16

enforcement of the Act, such as this lawsuit. *See Native American Arts, Inc. v. The Waldron Corp.*, 399 F.3d 871 (7th Cir. 2005).

## III.    CONCLUSION

The Indian Arts and Crafts Enforcement Act of 2000, 25 U.S.C. § 305(e) is unconstitutional as shown above. In addition, NAA has failed to establish it has Article III or prudential standing to bring a claim against PSC under the Act. Finally, NAA has failed to allege with sufficient particularity those allegations related to "false suggestions" allegedly made and has failed to state a claim upon which relief can be granted. For all these reasons, the Court should dismiss the Complaint.

WHEREFORE, Peter Stone Co., U.S.A., Inc., respectfully requests this Court dismiss Plaintiff's Complaint with prejudice and with costs.

PETER STONE CO., U.S.A., INC.

By:   /s/James K. Borcia
         One of Its Attorneys

James K. Borcia
Tressler, Soderstrom, Maloney & Priess, LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606
(312) 627-4000

17

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NATIVE AMERICAN ARTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08 CV 3908 |
| | ) | |
| PETER STONE CO., U.S.A., INC., | ) | Judge Darrah |
| | ) | |
| Defendant. | ) | Magistrate Judge Cole |

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2008, I electronically filed **Defendant's**

**Memorandum of Law in Support of its Motion to Dismiss** with the Clerk of Court using the

CM/ECF system, which will send notification of such filings(s) to the following:

> Michael P. Mullen
> Scott M. Kolosso
> MULLEN & FOSTER
> 203 North Wabash Avenue, Suite 2300
> Chicago, IL  60601

PETER STONE CO., U.S.A., INC.


By:   /s/James K. Borcia
    One of Its Attorneys

James K. Borcia
Tressler, Soderstrom, Maloney & Priess, LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606
(312) 627-4000